In the Matter of the Various Applications of CLARENCE AUGUSTUS MANNING for the Determination of the Sufficiency of a Certain Designating Petition and to Have the Names of Two Signatories Thereto Stricken from the Enrollment List in Assembly District 15, Election District 55.*

Supreme Court, New York Special Term, March, 1924.

*Elections — Election Law, § 136, subd. 3, providing that signatures to designating petitions if they bear different dates shall be counted in the order of their priority of date is mandatory — signatures of voters on designating petitions duly filed cannot be counted on subsequent petition which said voters also signed — evidence insufficient to establish that signers of petition were "floaters."*

PROCEEDINGS to determine an election contest in assembly district 15, election district 55, New York county.

*William M. Chadbourne*, for petitioner.

*Samuel A. Berger* and *Samuel H. Hofstadter*, for various candidates.

*Alexander Holtzoff*, for various signers of petition.

*George P. Nicholson*, corporation counsel (*Russell P. Tarbox*, of counsel), for board of elections.

JOHN GODFREY SAXE, Referee. These are three special proceedings brought by Clarence Augustus Manning, one to strike out so much of the so-called " Coleman designating petition " as designates two members of the county committee for assembly district 15, election district 55, and the other two to strike out the enrollment of Nan M. O'Reilly and Rose Meyer, respectively, two of the signatories to the Coleman petition.

One valid signature to the said petition will satisfy the law. The Coleman petition has seven signatures. The said Manning duly filed an objection to the said petition and challenges five of the signatures, on the ground that the signatories signed the so-called " Meyer designating petition " before they signed the Coleman petition, and challenges the two other signatures, those of Miss Meyer and Miss O'Reilly, on the ground that these ladies are "floaters," illegally enrolled at No. 1276 Third avenue.

There is no question but that five of the signatories to the Coleman petition are duly enrolled voters in the Republican party, in assembly district 15, election district 55. It appears, however, that prior to signing the Coleman petition on February 19, 1924, these same five individuals on January 30, 1924, signed the Meyer petition. Both petitions are now on file in the board of elections, and so far as appears, no objection has been filed to the Meyer

* Confirmed March 28, 1924, by order of New York Special Term.

petition. Election Law, section 136, subdivision 3, provides that if an enrolled voter shall sign any petitions designating a greater number of candidates for party position than the number of persons to be elected thereto, his signatures, if they bear different dates, shall be counted in the order of their priority of date, for only so many designees as there are persons to be elected. I have examined the original petitions, and, in my opinion, the signatures of these five voters to the Coleman petition cannot be counted.

Counsel for the respondents endeavored to sustain two of these five signatures, those of Benjamin Markowitz, and his father, Passele Markowitz, upon the ground that Edward J. Tschimbke, who procured them, did so by fraud and misrepresentation. While Benjamin Markowitz, on direct examination, testified that " He said to me that he was from my Republican Club," and that he signed " thinking it was the Republican Club," he testified on cross-examination that Tschimbke told him that the names of the candidates on the designating petition were Dr. Manning and Mr. Vanderveer; that he knew of the club on Lexington avenue, and that he believed Tschimbke must have told him that he was from that club. Moreover, after Markowitz and his father had executed the petition, Tschimbke called in Schuyler M. Meyer, the candidate for district leader in that petition, who told Benjamin Markowitz that he was running for leader and about the formation of the new club, and asked him if he would not come up and join. In my opinion, so long as the two petitions remain on file in the board of elections, the provisions of section 136 are mandatory, and these five signatures upon the Coleman petition cannot be counted; moreover, even in a direct proceeding to cancel the signatures of Markowitz and his father upon the Meyer petition on the ground of fraud or mistake, I am of the opinion that these two signatories knew that there was some kind of a contest, that they were signing a petition emanating from the new club, that they intended to support Dr. Manning and Mr. Vanderveer at the polls, and that the respondents have not made out a case of fraud or mistake.

The signatures of Rose Meyer and Nan M. O'Reilly to the Coleman petition are challenged on the ground that they are not duly enrolled voters of the Republican party at No. 1274 Third avenue, in assembly district 15, election district 55, and their enrollment is also challenged by separate applications to strike their names from the enrollment book.

At the opening of the reference, their counsel made a motion to dismiss the two proceedings to strike their names from the enrollment book, upon the ground that all the material allegations of the petitions are made on information and belief. I reserved

decision on that motion, because the petitioner, by his objection to the Coleman petition in the principal proceeding, had the right to adduce proofs upon this question, but, in my opinion, the motion to dismiss was well taken. *Matter of Titus*, 117 App. Div. 621; *Matter of O'Brien*, Id. 628; *Matter of McGuire*, Id. 637; all affd., 188 N. Y. 585.

I am also of the opinion that the petitioner has wholly failed to make out a case on the merits successfully challenging the enrollment of these two ladies at No. 1276 Third avenue. Prior to Christmas, 1923, Mrs. Sarah Meyer lived with her family at No. 1226 Madison avenue, in assembly district 15, election district 42. Her family included Miss Rose Meyer and Miss O'Reilly. Between Christmas and New Year's, 1923, Mrs. Meyer's son purchased a house in Flushing, in Queens county, and about that time Mrs. Meyer and her son moved to their new home. On or about Washington's birthday, 1923, Rose Meyer rented an apartment at 1276 Third avenue, in assembly district 15, election district 55. Bessie Kullman makes the arrangements for letting of apartments there. Miss Meyer looked at the apartment, asked Mrs. Kullman how much she wanted for it. Mrs. Kullman said fifteen dollars a week, and Miss Meyer took it. Shortly thereafter, Miss Meyer and Miss O'Reilly moved into the apartment, which was renovated for them, and still reside there. On February 29, 1924, Miss Meyer and Miss O'Reilly appeared at the board of elections and pursuant to Election Law, section 184, subdivision 2, requested to have their enrollment changed to this new address. The board of elections furnished them with the usual forms of printed affidavit, which contain one blank for the old address and one blank for the new address, and they duly made affidavits stating, " I have formerly resided at 1226 Madison Avenue and am now an enrolled voter with the Republican Party in the 42nd Election District, 15th Assembly District. I have moved from said Election District to 1274 Third Avenue, which is in the 55th Election District of the 15th Assembly District. I, therefore, request that my enrollment be transferred as provided by Section 184, subdivision 2 of the Election Law." Thereupon, the board asked them the series of questions set forth in the signature copy of the enrollment books, and they answered the same, signed their names upon appropriate pages of the book for assembly district 15, election district 55, their affidavits were pasted thereon, and the board made the proper notation of the change in enrollment.

The petitioner challenges this enrollment in a variety of ways, urging principally that these young ladies, between Christmas and New Year's, 1923, and Washington's birthday, 1924, had acquired

a residence in Flushing, and also that the apartment building, No. 1274 Third avenue, is of such a character and in such a neighborhood, that young ladies of good character would not take up a *bona fide* residence there, but could only have done so as floaters for political purposes, and in that connection they point to the fact that these young ladies signed the Coleman petition on February 29, 1924, the same day that they affected their change of enrollment.

I find, as a fact, that during the period from Christmas, 1923, to this day, these two young ladies had only two legal residences — one at 1226 Madison avenue, and one at 1274 Third avenue. Between New Year's day and Washington's birthday, 1924, they had no fixed place of abode, spending various nights at a variety of places with relatives and friends. They never had a residence at Flushing. During the period from Christmas, 1923, to Washington's birthday, 1924, they only spent occasional nights in Flushing, and it is natural that they should have visited there since they had lived in previous years as part of Mrs. Meyer's family.

Miss Meyer is employed by the Cosmopolitan Production Company, and at the present time is temporarily in Plattsburg, N. Y., where the work of that company is temporarily progressing.

Miss O'Reilly is a writer connected in business with the New York *Evening Post.*

The reason why they did not take up a residence in Flushing is because they were both working girls and desired to continue to live in this city. They were evidently familiar with the organization Republican club in assembly district 15, and it sufficiently appears from the record that they were interested in Republican politics in assembly district 15 and desired to retain their residence in that assembly district.

There is only one circumstance throwing any doubt upon their entire good faith. The motion papers were served on Friday, March 14, 1924, returnable on Monday, March seventeenth. Their attorney is an orthodox Hebrew who does not work on Friday nights or Saturdays. He requested another lawyer to prepare Miss O'Reilly's answering affidavit and arranged to have Miss O'Reilly attend at that lawyer's office for that purpose. The affidavit so prepared was introduced in evidence before me (I having ruled, with the acquiescence of all parties, that I was to hear and determine the principal proceeding solely on testimony taken before me, and that the petition and affidavits in that proceeding were not before me unless introduced in evidence), and, in that affidavit, prepared by this lawyer from information given to him by Miss O'Reilly, she stated that after she and Miss Meyer had given up their residence at 1226 Madison avenue, they, for a

period, maintained their residence at 640 Madison avenue. The ladies did spend certain nights at 640 Madison avenue. Miss O'Reilly's oral testimony would indicate that they did not take up a legal residence there, although they possibly originally intended to move there. The question is one of intent and, in my opinion, is not material upon the present controversy. The petitioner claims that the affidavits filed with the board of elections are false because the young ladies did not move directly from the Madison avenue address to the Third avenue address. In my opinion, they did directly move from one residence to another, the intervening places of temporary sojourn being wholly immaterial; but, even if they did take up an intervening residence at 640 Madison avenue, which is also in assembly district 15, there is nothing in the statute which requires a voter to have to directly move, and, as above stated, the blanks furnished by the board of elections do not contain blanks for more than the address of an original enrollment and the address of a new enrollment. In my opinion, these affidavits stated the true facts and these ladies had legal right to have their enrollment changed, even assuming that their motive might have been to continue their worthy political interest and activities as regular members of the Republican party in assembly district 15. The proceedings should, therefore, be dismissed, with costs.

Ordered accordingly.